UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEFINO R. GALANG and ELIZABETH B. GALANG,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A. and THE BANK OF NEW YORK MELLON f/k/a/ THE BANK OF NEW YORK as Trustee for WORLD SAVINGS REMIC TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 20 and DOES 1-100, inclusive,<br><br>Defendants. | No. 2:18-cv-01640-JAM-KJN<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

In April 2018, Plaintiffs Josefino and Elizabeth Galang filed a complaint in state court against Wells Fargo Bank and The Bank of New York Mellon, as trustee for the World Savings REMIC trust, and 100 Doe defendants. Compl. at 1-2, ECF No. 2. Plaintiffs seek damages, quiet title, declaratory relief, and an injunction barring Defendants "from initiating and pursuing foreclosure activity" against the property at 8518 Mecca Road in Elk Grove, CA. Id. at 15.

Defendants removed the case to this Court. Notice of Removal, ECF No. 1. Soon after, they filed this motion to dismiss, arguing Plaintiffs failed to state a claim upon which

1

relief may be granted.[1]  Mot., ECF No. 12.  For the reasons stated below, the Court GRANTS Defendants' motion.[2]

I. FACTUAL BACKGROUND

In September 2005, Plaintiffs executed a Deed of Trust and Adjustable Rate Note with lender and loan servicer World Savings Bank FSB.  Compl. ¶ 6.  Golden West Savings Association Service Company was the trustee.  Id.

In 2007, Wachovia Bank acquired Golden West Financial–the parent company of World Savings Bank.  Id. ¶ 7.  Accordingly, Wachovia Mortgage became the servicer of Plaintiffs' mortgage loan.  Id.  Wells Fargo Bank then acquired Wachovia.  Id. ¶ 9.

Ten years later, Plaintiffs sent a Qualified Written Request ("QWR") to Wells Fargo Home Mortgage, requesting information about the servicing of their mortgage loan.  Id. ¶ 19.  Plaintiffs asked for a copy of "The Mortgage Note as it currently existed with all endorsements . . . and all allonges affixed to the note and assignments thereof."  Id.  Over the next two months, Wells Fargo Home Mortgage responded to Plaintiffs, stating, "Wells Fargo Bank, N.A. is the owner/assignee of their mortgage loan," and providing a number of documents, including a copy of the Mortgage Note.  Id. ¶¶ 20-21.  The Mortgage Note did not include any endorsements.  Id. ¶ 21.

Following Wells Fargo Home Mortgage's response, Plaintiffs

---

[1] The Court takes judicial notice of the documents attached as Exhibits A-C in Defendants' motion to dismiss.  See Fed. R. Civ. Proc. 201(b).

[2] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for November 6, 2018.

2

submitted a second QWR as well as a loan modification application. Id. ¶ 22. Wells Fargo Home Mortgage denied the application. Id. ¶ 23. It also sent a new version of the Mortgage Note. This version included endorsements. Id. ¶ 24.

On November 24, 2017, Plaintiffs appealed the denial of their loan modification. Id. ¶ 26. Wells Fargo Home Mortgage denied the appeal a month later. Id. It advised Plaintiffs that "the foreclosure process, if it had not already begun, could begin at any time." Id. On March 5, 2018, First American Title Insurance Company recorded a Notice of Default against the Plaintiffs on behalf of Wells Fargo. Id. ¶ 27.

Plaintiffs contend that Wells Fargo lacks authority to enforce Plaintiffs' mortgage loan or to collect mortgage payments from them. Id. ¶ 30. Their claims principally rest upon the allegation that World Savings Bank sold Plaintiffs loan to the WSR 20 Trust at some point before the trust's closing on October 21, 2005. Id. ¶ 10. Plaintiffs maintain that because World Savings Bank sold its interest in their loan before the bank was acquired by Wachovia, neither Wachovia nor Wells Fargo ever acquired an interest in that asset. Id. ¶ 30.

II. OPINION

A. Legal Standard

Federal Rule Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." A court will dismiss a suit if the plaintiff fails to "state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). When considering a

3

motion to dismiss, the Court "must accept as true all of the allegations contained in a complaint." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). It is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." Id. "Unwarranted inferences" are likewise "insufficient to defeat a motion to dismiss for failure to state a claim." Epstein v. Washington Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996).

The Supreme Court has abandoned the more lenient pleading standard of Conley v. Gipson that Plaintiffs rely on in their opposition. Opp'n at 6, ECF No. 14. Rule 12(b)(6) no longer requires "appearance, beyond a doubt, that plaintiff can prove no set of facts in support of a claim that would entitle him to relief." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 562-63 (2007). Now, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim . . . that is plausible on its face." Iqbal, 556 U.S. at 678.

Rule 12(b)(6)'s plausibility standard "is not akin to a probability requirement, but asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. Allegations that are "merely consistent with a defendant's liability [] stop[] short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations omitted).

    B.    Analysis

        1.    HOLA Preemption

Plaintiffs' claims are preempted by the Home Owners Loan Act ("HOLA"). The HOLA analysis requires this Court to consider

two questions: 1) whether Wells Fargo is the type of entity that may assert HOLA preemption, and 2) whether the Galangs' claims arise out of area of state law preempted by HOLA. As discussed below, this Court finds that the answer to both of these questions is yes.

                a.    HOLA's Application to Defendants

HOLA, enacted in 1993, "gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing thrifts." Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1005 (9th Cir. 2008). Accordingly, OTS promulgated 12 C.F.R. § 560.2 which preempted "lending regulation for <u>federal savings associations</u>." (Emphasis added.) It is undisputed that Wells Fargo does not fall into this category. Mot. at 3-4. Nevertheless, Wells Fargo argues that, because a federal savings association originated Plaintiffs' loan, HOLA applies. Id.

Initially, district courts almost uniformly adopted Wells Fargo's position—that a non-FSA entity could assert HOLA preemption if its predecessor in interest originated the loan as a federal savings association. See Castillo v. Wachovia Mortg., No. C-12-0101-EMC, 2012 WL 1213296 at *4-5 (N.D. Cal. Apr. 11, 2012) (collecting cases).

Over the years, however, several courts within the Ninth Circuit have called the predecessor-in-interest theory of preemption into question. See, e.g., Rijhwani v. Wells Fargo Home Mortg., No. C13-05881-LB, 2014 WL 890016 (N.D. Cal. Mar. 3, 2014); Rhea v. Wells Fargo Home Mortg., Inc., No. CV 12-05394-DMG, 2012 WL 8303189 at *3 (C.D. Cal. Nov. 27, 2012); Gerber v. Wells Fargo Bank, N.A., No. CV-11-01083-PHX-NVW, 2012 WL 413997

5

at *4 (D. Ariz. Feb. 9, 2012). These courts maintain that "[t]he important consideration is the nature of the alleged claims that are the subject of the suit," and that "[t]he governing laws would be those applicable . . . at the time the alleged misconduct occurred." Rijhwani, 2014 WL 890016 at *6-7 (quoting Rhea, 2012 WL 8303189 at *3).

The Eastern District of California has come down on both sides of this ledger. Compare Albiza v. Wachovia Mortg., No. 2:11-cv-02991-KJN, 2012 WL 1413996 at *16 (E.D. Cal. Apr. 20, 2012) (finding that non-FSA defendants were not entitled to HOLA preemption), with Rodriguez v. Wells Fargo Bank, N.A., No. 2:16-cv-00232-MCE-AC, 2018 1392872 at *3 n.3 (E.D. Cal. Mar. 20, 2018) (finding that non-FSA defendants were entitled to HOLA preemption). Wells Fargo cites to Rodriguez—a case in which the Court found "that HOLA protections attach[ed] to Plaintiff's loan because the loan originated with an FSA." Id. at *3 n.3.

Rather than arguing that a federal savings association's successor in interest may not assert HOLA preemption, Plaintiffs maintain that the Dodd-Frank Wall Street Reform and Consumer Protection Act amended HOLA in 2010 such that it no longer "occup[ies] the field 'in any area of State law.'" Opp'n at 11-12 (quoting 12 U.S.C. § 1465(b)). But these amendments are not relevant to the case at hand. As Defendant argues, Dodd-Frank and its corresponding regulations do not apply retroactively to Plaintiffs' mortgage, which originated in 2005. See Reply at 5, ECF No. 15. See also Villareal v. Seneca Mortg. Services, No.1:14-cv-02033-MCE-GSA, 2015 WL 2374288 at *3 n.7 (E.D. Cal. May 18, 2018) ("Because the newly created [Dodd-Frank]

6

regulations are not retroactive, however . . . the OTS regulations are applicable here."). Because Plaintiffs do not provide any reason as to why the Court should deviate from the ruling in Rodriguez, No. 2:16-cv-00232-MCE-AC, 2018 1392872 at *3 n.3, the Court finds that Wells Fargo, as a Federal Savings Association's successor in interest, may assert HOLA preemption.

                        b.    Preemption of State-Law Claims

With respect to the second issue of the HOLA analysis, the Court finds that Plaintiffs' claims are preempted because they are predicated on allegations that, in effect, challenge the servicing of their mortgage. See 12 C.F.R. § 560.2(b)(10). In Silvas, 514 F.3d at 1001, the Ninth Circuit adopted OTS's guidance for how to properly evaluate whether a state law is preempted under 12 C.F.R. § 560.2:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted.

OTS, Final Rule, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996).

The plaintiff in Silvas, 514 F.3d at 1006 alleged that E*TRADE violated California law by "including false information on its website and in every media advertisement to the California public." The Ninth Circuit found that this fell squarely within paragraph (b), and was, thus, preempted. See § 560.2(b)(9) (covering "[d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms. . . .").

Other cases cited by Defendants similarly illustrate courts' common-sense approach to assessing HOLA's preemptive

7

reach. Mot. at 4-5. See also, e.g., Rodriguez v. Wells Fargo Bank, N.A., No. 2:16-cv-00232-MCE-AC, 2018 WL 1392872, at 3 (E.D. Cal. Mar. 20, 2018) (finding that plaintiff's claims of predatory lending dealt with the "processing and servicing" of a mortgage, and was therefore preempted by section 560.2(b)(10)); Lopez v. World Savings & Loan Ass'n, 105 Cal. App. 4th 729, 738 (2003)(finding that plaintiff's challenge to a fax fee dealt with "loan-related fees," and was therefore preempted by section 560.2(b)(5)). Indeed, this Court finds the Northern District of California's interpretation of Silvas in Naulty v. GreenPoint Mortg. Funding, Inc., No. C09-1542 MHP, 2009 WL 2870620 at *4 (N.D. Cal. Sept. 3, 2009) particularly persuasive. In Naulty, the court concluded that "the Silvas court did not look merely to the abstract nature of the cause of action allegedly preempted but rather to the functional effect upon lending operations." The central question, therefore, becomes "whether an application of a given state law . . . would impose requirements regarding the various activities broadly regulated by the OTS." Id. at *4.

Plaintiffs' only substantive cause of action is their claim under the California Business and Professions Code § 17200 et seq. Compl. ¶¶ 48-55. In their complaint, the Galangs allege that Defendants "have engaged and are engaging in deceptive business practices <u>with respect to mortgage servicing</u> and the mailing of fraudulent foreclosure documents. . . ." Compl. ¶ 51 (emphasis added). Yet, in their opposition, they maintain that the suit has "absolutely nothing to do with the lending or servicing practices or policies of Wells Fargo or its

8

predecessors." Opp'n at 11.

This Court must look beyond labels to the state law's "functional effect upon lending operations." Naulty, No. C09-1542 MHP, 2009 WL 2870620 at *4. California law prohibits any entity from "record[ing] or caus[ing] a notice of default to be recorded" or "otherwise initiat[ing] the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust." Cal. Civ. Code. § 2924(a)(6). Plaintiffs seem to allege that Wells Fargo violated this provision because it did not respond to their requests with evidence of ownership that Plaintiffs deemed sufficient. See Compl. ¶¶ 19-27. But reading section 2294(a)(6) as Plaintiffs do would require the lending party to produce a mortgage's chain of title every time it requested payment on a mortgage or issued a notice of default. Not only is this reading unsupported by law, but it also causes a state law to "impose requirements regarding . . . servicing [of] . . . mortgages." See 12 C.F.R. § 560.2(b)(10). To the extent that section 2294(a)(6) seeks to impose this requirement upon loans governed by HOLA, it is preempted. Plaintiffs' claims for declaratory relief, unjust enrichment, and quiet title are likewise preempted, as they are all based upon their argument that, under state law, Wells Fargo is without authority to enforce their mortgage.

2. Insufficient Pleading

Plaintiffs' complaint must also be dismissed because it fails to meet the pleading standard of Rule 12(b)(6). As an initial matter, the Court rejects Plaintiffs' argument that their claims are subject to a more lenient pleading standard

because the relevant facts "are within the knowledge and control of the defendant and are unknown to the plaintiff." Opp'n at 19 (quoting Credit Managers Assoc. of California v. Super. Ct. ("Credit Managers"), 51 Cal. App. 3d 352, 361 (1975)). A court applies the procedural law of the forum. Restatement (Second) of Conflict of Laws § 122. Therefore, in Credit Managers, the state court appropriately applied the pleading standard set forth under California's rules of civil procedure. Id. at 361. This case, however, is in federal court, so it is governed by the Federal Rules of Civil Procedure. See Hanna v. Plumer, 380 U.S. 460, 465-66 (1965).

The federal rules require this Court to take all of Plaintiffs' well-pleaded facts as true. Iqbal, 556 U.S. at 678. And, after disregarding any "unwarranted inferences" and "conclusory allegations of law," the Court must decide whether the Plaintiffs' claims are more than "merely consistent" with an entitlement to relief. Iqbal, 556 U.S. at 678; Epstein v. Washington Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996).

Plaintiffs allege that Wells Fargo is attempting to foreclose on a mortgage it does not own. Opp'n at 10. Specifically, they argue that Wells Fargo is "not a real party in interest with standing to enforce Plaintiffs' mortgage loan or to collect mortgage payments" because Global Savings Bank securitized the loan, selling it to the WSR 20 Trust before Wachovia acquired Global Savings Bank. Id. And because Wachovia never owned the Galangs' mortgage, Wells Fargo did not acquire ownership when it merged with Wachovia. Id.

The Court declines to address the question of whether

securitizing a loan transfers the originator's ownership interest in that loan because Plaintiffs failed to adequately plead that their loan was, in fact, securitized. In Plaintiffs' complaint, they conclude that their "mortgage loan was sold to the WSR 20 Trust on or before the Trust's Closing Date of October 21, 2005." Compl. ¶ 10. This conclusion is based on Plaintiffs' allegations that, (1) the parent company of World Savings Bank "regularly securitized loans from [its] portfolio" through World Savings Bank, (2) the "origination date of the mortgage loan . . . made it timely for securitization within the WSR 20's Cut-Off date," and (3) "[t]he terms and characteristics of [their] pick-a-pay mortgage loan are all within the parameters of the securitized mortgage loans in the WSR 20 Trust." Compl. ¶¶ 6, 10-11; Opp'n at 7-8.

    Plaintiffs attach Golden West Financial's Form 10-K as an exhibit, confirming the bank's policy of regularly securitizing loans through World Savings Bank. Exh. A to Compl. But nothing else in Plaintiffs' exhibits lend support to the conclusion that the Galangs' loan was securitized.[3] Their opposition to Defendants' motion to dismiss likewise fails to provide a factual basis for the conclusion that their loan was sold to the WSR Trust. Plaintiffs' non-conclusory factual allegations are

---

[3] Plaintiffs include the findings of "a third party forensic mortgage securitization investigation and audit" in an exhibit to their complaint. Exh. D at 2. The Court declines to categorically renounce the reliability of these types of reports as Defendants urge. See Reply at 3. However, conclusory statements fare no better when packaged in a third-party report than they do when included in a plaintiff's complaint. See Iqbal, 556 U.S. at 678.

consistent with a claim that their loan was securitized. But pleadings that "are merely consistent with a defendant's liability" do not survive a Rule 12(b)(6) motion to dismiss. See Iqbal, 556 U.S. at 678. Without sufficiently alleging that their loan was securitized, Plaintiffs' argument that Wells Fargo lacks standing to enforce their mortgage is likewise unsupported. Because the allegations in the complaint do not make out a plausible cause of action, Plaintiffs' suit must be dismissed for this reason as well.

## III. ORDER

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss. Because the preemption defect cannot be cured by amendment, Plaintiffs' claims are dismissed with prejudice.

Further, the Court's Order re Filing Requirements ("Order"), ECF No. 4-2, limits reply memoranda to five pages. Order at 1. A violation of the Order requires the offending counsel (not the client) to pay $50.00 per page over the page limit to the Clerk of Court. Id. The Court does not consider arguments made past the page limit. Id. Defendants' reply memoranda exceeded the page limit by four pages. Defendants' counsel must send a check payable to the Clerk for the Eastern District of California for $200.00 no later than seven days from the date of this Order.

IT IS SO ORDERED.

Dated: November 28, 2018

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE